UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

————————————————————X

Michelle Pieger, for the Estate of          Civil Action
Jeffrey Michael Pieger                       No: 3:02CV00749(SRU)


   Plaintiff

VS.

Metro-North Railroad Company              March 9, 2004

   Defendant

————————————————————X

**2004 MAR -9  P 5: 26**
**U.S. DISTRICT COURT**
**BRIDGEPORT, CONN**
**FILED**

## PLAINTIFF'S PROPOSED JURY CHARGES

    The plaintiff, through her counsel, submits herewith her proposed Jury Charges.

    Because the proposed jury charges are based on plaintiff's present understanding of the case, plaintiff reserves the right to submit additional proposed charges.


Dated:  March 9, 2004                    FOR THE PLAINTIFF,

                                         By _____
                                              George J. Cahill, Jr. (ct04485)
                                              Charles C. Goetsch (ct 0776)
                                              Scott E. Perry (ct 17236)
                                              CAHILL & GOETSCH, P.C.
                                              43 Trumbull Street
                                              New Haven, Connecticut  06511
                                              (203) 777-1000

Request No. 1

## **ATTORNEY INTERVIEWS**

An attorney has a right to interview a witness for the purpose of learning what testimony the witness will give.  The fact that the witness has talked to an attorney and told him what he would testify to does not, by itself, reflect adversely on the truth of the testimony of the witness.  45 U.S.C. §60.  Norfolk Southern Ry. v. Thompson, 430 S.E. 2d 371 (Ga. App. 1993); Harper v. Missouri Pacific R.R. Co., 636 N.E. 2d 1192 (June 30, 1994; International Business Machines Corp. v. Edelstein, 526 F.2d 37, 41-44 (2d Cir. 1975).

Request No. 2

## ATTORNEY STATEMENTS AT TRIAL

Arguments, statements, and remarks of counsel are intended to help you in understanding the evidence and applying the law, but are not evidence.  The dollar figure suggested by plaintiff's counsel as appropriate relief in this case is only a comment on the evidence or a suggestion.  Such a suggestion is not evidence and you are not bound by it.  Philadelphia & Reading Ry. v. Sherman, 247 F.269, 271 (2d. Cir. 1917); Modave v. Long Island Jewish Medical Center, 501 F.2d 1065, 1079 (2d. Cir. 1974); Mileski v. Long Island Railroad Co., 499 F.2d 1169, 1172-74 (2d Cir. 1974).

Request No. 3

## THE FEDERAL EMPLOYERS' LIABILITY ACT

At the time of this occurrence there was in force a federal statute which provided that whenever an employee of a railroad is injured while engaged in the course of his employment, and the injury resulted, in whole or in part, from the negligence of any of the officers, agents or employees of the railroad, or by reason of any defect or insufficiency, due to the railroad's negligence, in its cars, engines, appliances, machinery, track, roadbed, works, boats, wharves, or other equipment, then the railroad shall be liable in damages to the injured employee. 45 U.S.C. §51.

Section 4 of the Federal Employers' Liability Act [45 U.S.C.A. §54 ] provides in part that:

> "In any action brought against any common carrier . . . to recover damages for injuries for . . . any of its employees, such employee shall not be held to have assumed the risks of his employment in any case where such injury . . . resulted in whole or in part from the negligence of any of the officers, agents, or employees of such carrier."

The purpose "of the FELA legislation is to promote adequate recovery for negligently injured railroad workers and thereby promote safe operating conditions." Kozar v. Chesapeake and Ohio Ry. Co., 320 F. Supp. 335, 387 (WD Mich. 1970), aff'd in part and vacated in part on other grounds, 449 F.2d 1238 (6th Cir. 1971). See House Judiciary Com. Rep., H.R. Rep. No. 1386, 60th Cong., 1st Sess., 42 Cong. Rec. 4434 et seq. (1908), Sinkler v. Missouri P. R. Co., 356 U.S. 326, 329-30 (1958), and Kernan v. American Dredging Co., 355 U.S. 426, 431-33 (1958).

Request No. 4

## **RAILROAD NOT AN INSURER**

"The FELA was designed to put on the railroad industry some of the cost for the legs, eyes, arms, and lives which it consumed in its operations. Not all these costs were imposed, for the Act did not make the employer an insurer. The liability which it imposed was the liability of negligence." Wilkinson v. McCarthy, 336 U.S. 53, 68 (1948).

Request No. 5

## **ELEMENTS**

In order to find the defendant liable to the plaintiff under the FELA statute, you must find by a preponderance of the evidence:

First, that the defendant is a railroad engaged in interstate commerce;

Second, that the plaintiff was an employee of the defendant in interstate commerce, acting in the course of his employment;

Third, that the defendant or one of its employees or agents was negligent; and

Fourth, that such negligence played a part, no matter how slight, in bringing about an injury to the plaintiff.

Only then should you reach the question of damages, which I will discuss later. Sand, 4 Modern Federal Jury Instructions §89-2 (1993).

In this case, the first and second elements are not disputed and deemed established, so let us turn to the third element of negligence.

Request No. 6

## **NEGLIGENCE**

The third element is whether the defendant or its employees or agents were negligent.

The fact that plaintiff was injured during his employment does not automatically entitle him to recover from his employer.  Plaintiff can only recover from the defendant if negligence and the other elements I will describe are established by a preponderance of the evidence.  (The defendant railroad was not an insurer of the plaintiff's safety.)  Sand, 4 Modern Federal Jury Instructions, §89-8 (1993).

Request No. 7

## **NEGLIGENCE DEFINED**

Negligence is simply the failure to use the same degree of care which a person or ordinary prudence would use in the circumstances of a given situation. It can be the doing of something which a reasonably prudent person would not have done or failing to do something which a reasonably prudent person would have done under the circumstances. Sand, 4 Modern Federal Jury Instructions, §89-9 (1993).

Request No. 8

## NEGLIGENT ACTS OF CORPORATION AND ITS EMPLOYEES

Since a corporation can act only through its officers, or employees, or other agents, the burden is on the plaintiff to establish, by a preponderance of the evidence in the case, that the negligence of one or more officers, or employees, or other agents of the defendant was a cause of any injuries and consequent damages sustained by the plaintiff.

Any negligent act or omission of an officer, or employee, or other agent of a corporation, in the performance of his duties, is held in law to be the negligence of the corporation. 3 <u>Fed. Jury Prac. and Inst</u>. §94.15 (1977).

If the plaintiff's injury is caused or contributed to by the negligent act or omission of a fellow employee, acting in the course of his employment, then the defendant employer would be responsible for the act or omission of the fellow employee. 3 <u>Fed. Jury Prac. and Inst</u>. §94.11 (1977).

Request No. 9

## **DUTY TO GUARD AGAINST FORESEEABLE RISKS**

This definition of negligence requires the defendant to guard against those risks or dangers of which it knew or by the exercise of due care should have known. In other words, the defendant's duty is measured by what a reasonably prudent person would anticipate or foresee resulting from particular circumstances.

The fact that no similar injury ever occurred in a particular location does not foreclose a finding of foreseeability. Sand, 4 Modern Federal Jury Instructions §89-10 (1993), Gallick v. Baltimore & Ohio Railroad Co., 372 U.S. 108 (1963).

Request No. 10

## **FORESEEABLE CONSIDERATIONS**

How do you determine whether the defendant railroad knew or, through the exercise of reasonable care, should have known of a particular risk or danger?

First, you may consider any evidence presented concerning the actual knowledge of the railroad or its foreman or other agents.

Second, you may consider any evidence presented concerning whether the risk was brought to the attention of the railroad or its foreman or other agents, for example, through employees' statements, complaints or protests that a particular condition or assignment was dangerous.

Third, you may consider whether a reasonably prudent person would have performed inspections which would have brought the dangerous condition to the defendant's attention or otherwise would have known of the condition.

If you find by a preponderance of the evidence that a reasonably prudent person would have taken reasonable precautions against the risk based on such actual knowledge, statements, complaints or protests or reasonable inspection, and you find that the defendant railroad failed to take such reasonable precautions, then you may find that the defendant railroad was negligent. Sand, 4 Modern Federal Jury Instructions §89-11 (1993).

Request No. 11

## **NOTICE**

The defendant Railroad has a continuing duty to exercise reasonable care to maintain such facility in a reasonably safe condition for use by its employees, which include a duty to exercise ordinary care to inspect and to discover any defect which would render such facility reasonably unsafe.

Actual notice is such notice as is proved to have been given to a party directly and personally, or such as he is presumed to have received personally because the evidence within his knowledge was sufficient to put him upon inquiry. Constructive notice is information or knowledge of a fact imputed by law to a person (although he may not actually have it), because he could have discovered the fact by proper diligence, and his situation was such as to cast upon him the duty of inquiring into it. McKee v. New York Central Railroad Co., 355 F.2d 165, 166 (6th Cir. 1966).

Request No. 12

## **IMPUTED NOTICE OF DEFECTS**

The duty to furnish an employee with a work place and appliances which are safe is a continuing one and notice of defects will be imputed to the Railroad where they could have been discovered by reasonable inspection and by the exercise of reasonable care.  <u>Beattie v. Elgin J. & E. R. Co.</u>, 217 F.2d 863, 866 (7th Cir. 1954).

Request No. 13

## **STANDARD VARIES WITH LEVEL OF RISK**

The degree of care required by the reasonable care standard varies with the level of risk.  The greater the risk of harm, the greater the required level of care.  Sand, 4 Modern Federal Jury Instructions §89-12 (1993).

Request No. 14

## **DUTY TO PROVIDE SAFE PLACE TO WORK**

Thus, the Federal Employers' Liability Act imposed on the defendant railroad a duty to the plaintiff, and to all its employees, to exercise reasonable care to provide him with a reasonably safe place in which to work, reasonably safe conditions in which to work, and reasonably safe tools and equipment.   Sand, 4 Modern Federal Jury Instructions §89-13 (1993).

Request No. 15

## **DUTY TO INSPECT**

This duty includes the responsibility to inspect the premises where the railroad's employees will be working and their equipment, and to take reasonable precautions to protect its employees from possible danger.  Sand, <u>4 Modern Federal Jury Instructions</u> §89-15 (1993).

Request No. 16

## **FURTHER PRECAUTIONS**

The Railroad has the duty to take further precautions which are reasonable and possible even though it had taken some precautions to eliminate a potentially dangerous condition or situation. Isgett v. Seaboard Coast Line R. Co., 332 F. Supp. 1127 (Dist. S. Ca. 1971).

Request No. 17

## **FAILURE TO ENFORCE OPERATING OR SAFETY RULES**

In the exercise of reasonable care for the protection of its employees, it was the duty of the defendant railroad to enforce its own operating and safety rules and procedures.  Duncan v. St. Louis-San Francisco Ry. Co., 480 F.2d 79, 85-86 (8th Cir. 1973).

Request No. 18

## **DUTY TO INSTRUCT AND SUPERVISE**

The defendant railroad has a duty under the FELA to provide the plaintiff with a reasonably safe place to work by adequately supervising his work and by adequately instructing him as to how to perform his work.  Lindauer v. New York Central R. Co., 408 F.2d 638, 640 (2d Cir. 1969), Erie R. Co. v. Collins, 259 F. 172, 177 (2d Cir. 1919), aff'd., 253 U.S. 77 (1920).

Request No. 19

## **<u>CONTINUING DUTY</u>**

The defendant railroad's duty is a "continuing duty," from which the carrier is not relieved by the fact that the employee's work at the place in question is fleeting or infrequent.  Sand, <u>4 Modern Federal Jury Instructions</u>, §89-16 (1993).

Request No. 20

## **PROCEDURES AND METHODS**

Similarly, you may find the defendant negligent if you find that it instructed its employees to perform tasks either with a number of employees or a procedure or method which it knew or in the exercise of reasonable care should have known, would result in injuries.  Sand, <u>4 Modern Federal Jury Instructions</u> §89-18 (1993).

Request No. 21

### **EMPLOYEE'S RIGHT TO ASSUME**

An employee has the right to assume that the Railroad has taken reasonable precautions to eliminate potential hazards at the work site, <u>Cazad</u> v. <u>C & O</u>, 622 F.2d 72, 75 (4th Cir. 1980), and that his co-employees are observing the applicable safety rules.

Request No. 22

## **NEGLIGENCE SUMMARY**

To summarize, if you find by a preponderance of the evidence that the defendant railroad failed to exercise reasonable care to provide the plaintiff with a reasonably safe place to work, reasonably safe conditions, tools, or equipment, or failed in any other way to exercise reasonable care in the circumstances, you may find that the defendant was negligent.  Sand, 4 Modern Federal Jury Instructions, §89-21 (1993).

Request No. 23

## **CAUSATION**

Another element to be determined is whether an injury to the plaintiff resulted in whole or part from the negligence of the railroad or its employees or agents.  In other words, did such negligence play any part, even the slightest, in bringing about an injury to the plaintiff?  Smith v. National Railroad Passenger Corp., 856 F.2d 467, 469 (2d Cir. 1988).

However, it is important to remember that there can be more than one cause of an injury.  The involvement of any other cause does not prevent a finding for the plaintiff, as long as you find that the employer's negligence played any part, no matter how slight, in causing an injury to the plaintiff.  Sand, 4 Modern Federal Jury Instructions §89-22 (1993).

Request No. 24

## **DAMAGES -- INTRODUCTION**

You reach the issue of damages only if you find that the plaintiff has established the first four elements, as I have explained them, by a preponderance of the evidence.

The fact that I charge you on the issue of damages does not mean that plaintiff is entitled to prevail -- that is for you to decide. I instruct you on this subject only in the event you decide that plaintiff has sustained his burden of proof as to the first four elements. Sand, 4 Modern Federal Jury Instructions §89-27 (1993).

Request No. 25

## **DAMAGES -- GENERALLY**

The purpose of the FELA is to compensate an injured party for the damages sustained as a result of another's negligent conduct (or conduct in violation of an applicable safety statute).

Your award must be fair and just.

It should neither be excessive nor inadequate; it should be reasonable.  Sand, 4 Modern Federal Jury Instructions §89-28 (1993).

Request No. 26

## **WRONGFUL DEATH**

Under the FELA, if the plaintiff has sustained his burden of proof, he may recover on behalf of the decedent's family for:

1.  The loss of support and other financial benefits they would have received from the defendant;

2.  Loss of services which would have been provided to them by the decedent; and

3.  In the case of the decedent's minor children, he may recover for the loss of the decedent's care, attention, instruction, training, advice, and guidance.

He may also recover for the pain and suffering experienced by the decedent before he died.  Sand, 4 Modern Federal Jury Instructions, §89-29 (1993).

Request No. 27

## **DAMAGES**

If you decide for the plaintiff on the question of liability, you must then fix the amount of money which will reasonably and fairly compensate him for any of the following elements of damage proved by the evidence to have resulted from the negligence of the defendant:

(a) You may include in your verdict the plaintiff's past loss of earnings shown by the evidence in the case to be proximately caused by the injuries as a result of the incident in question.

(b) You may include in your verdict the plaintiff's future loss of earnings shown by the evidence in the case to be proximately caused by the injuries as a result of the incident in question. The plaintiff may recover not only for actual loss of future earnings, but for the impairment to his earning capacity. In considering impairment of earning capacity for the future, you must consider what the plaintiff's earning power would have been if he had not been injured and determine to what extent the injury caused a reduction in that earning power.

(c) You may award the plaintiff damages for any conscious pain, suffering and mental anguish you find Mr. Pieger incurred prior to his death. Such damages include a sum of money to reasonably compensate him for his loss of function and inability to enjoy life's normal activities suffered by him. The law prescribes no definite measure for pain, suffering and mental anguish damages, but leaves such damages to be set at your discretion. You the jury may estimate the amount of any such damages by considering the facts and circumstances in evidence in light of your own knowledge and experience in the affairs of life. Rendaldi v. New York, New Haven and Hartford RR. Co., 230 F.2d 841, 844 (2nd Cir. 1956).

(d) In awarding damages, you may take into consideration any medical expenses which you find from the evidence the plaintiff has incurred as a result of the injuries received in this accident.

(e) In awarding damages, you may take into consideration any medical expenses which you find from the evidence is reasonably probable that the plaintiff will incur in the future as a result of the injuries received in this accident.

(f) In awarding damages, you may include in your verdict, a sum of money which reasonably compensates the plaintiff for any pain, suffering, mental anguish, loss of function, and inability to enjoy life's normal activities already suffered by him and proximately resulting from the injury in question.

(g) In awarding damages, you may include in your verdict, a sum of money which will reasonably compensate the plaintiff for any pain, suffering, mental anguish, loss of function, inability to enjoy life's normal activities, and fear of the future which you find from the evidence in the case that it is reasonably probable he will suffer in the future from the same cause.

(h)  In awarding damages, you may include a sum of money that will reasonably compensate the plaintiff for any scarring and disfigurement he has suffered from the injury in question.

According to the U.S. National Center for Health Statistics, Vital Statistics of the U.S., Annual, the life expectancy of a white male person 36 years of age is 40.0 years.

This fact, of which the Court takes judicial notice, is now in evidence to be considered by you in arriving at the amount of damages, if any, to be awarded, in the event you find the plaintiff is entitled to a verdict.

Life expectancy, as shown by a mortality table, is merely an estimate of the probable average remaining length of life of all persons in our country of a given age, and that estimate is based on not a complete but only a limited record of experience. So the inference which may be drawn from the life expectancy shown by the table applies only to one who has the average health and exposure to danger of people of that age. In considering the life expectancy of the plaintiff, you should consider, in addition to what is shown by the table of mortality, all other facts and circumstances in evidence bearing on the life expectancy of the plaintiff, including his occupation, habits and state of health. 28 F.R.D. 401, 445.

Now, it is not necessary that any witness should have expressed an opinion as to the amount of such damages for such pain and suffering, but you, the jury, may estimate the amount of such damages, if any, by considering the facts and circumstances in evidence in light of your own knowledge and experience in the affairs of life. The law prescribes no definite measure of pain and suffering damages but leaves such damages to be fixed by you as your discretion dictates if, after considering all the circumstances that may be just and proper, you find for the plaintiff, Jeffrey Michael Pieger, in this regard. 5 Am. Jur. Trials at 1023, 1026-27.

Request No. 28

## **PRESENT VALUE OF FUTURE DAMAGES**

In computing the damages arising in the future because of injuries or because of the loss of future earnings, you must take into consideration both the earning power of money and inflation. Since the plaintiff is being compensated for some damages today which will not occur until the future, he has the benefit of the use of that money. Consequently, you must reduce those future damages to present value. To illustrate this, consider that it is more advantageous for a debtor to pay you $98.00 today than $100.00 a year from now. The reason is that $98.00 today is worth more than $100.00 a year from now because the $98.00 can be invested at prevailing interest rates and be worth more than $100.00 one year from now. This is why future damages must be reduced to present value. However, it must be kept in mind that a dollar today is not worth the same as a dollar one year from now because of the effects of inflation.

If an adjustment for inflation is to be made, two approaches are available. Under the first method the projection of current wages is increased to reflect the fact that the employee would have received cost of living increases to keep pace with inflation. The sum of those increased annual wage figures is then discounted to present value by the prevailing interest rate. Under the second method the discount rate is decreased below the prevailing interest rate to reflect the estimated rate of inflation. This reduced discount rate is then applied to the total amount of the lost future earnings, which is calculated by multiplying the current loss of annual earnings by the number of years those earnings will be lost in the future. If the same estimated inflation rate is used, the outcome of the calculation under either approach would be very nearly identical. <u>Doca v. Marina Mercante Nicaraguense, S.A.</u>, 634 F.2d 30, 34 (2d Cir. 1980).

Here is a bit more explanation of why the Court is suggesting a two percent "real discount rate" rather than going through the more complex process of considering the effects of inflation both on future earning capacity and on discount (and interest) rates.

First, to find what stream of weekly, monthly, or annual wages a person would have had the capacity to earn in the future, if he or she had not sustained an injury, you would need to take account of how inflation would affect the amount of wages to be earned in the future. For example, if a person was, on a certain date in the recent past, earning a certain figure -- let's use for illustration a round figure of $20,000 -- then to find how much he or she would have had the capacity to earn in the future, but for injury, you would need to consider how inflation would increase future earnings of persons in like positions.

Second, to find what is the present value, on the day you reach a verdict, of such a future stream of wages a person would have been able to earn, you would need to take account of how much interest could be earned on money paid in a lump sum on the day of verdict, to compensate for future loss of earning capacity. That is, the money paid in a lump sum could be invested to earn interest, so that the lump sum plus the interest would be exactly enough to pay the future stream of wages. When we are using it to calculate the present value of a future stream of wages, we commonly refer to this interest figure as the discount rate. What discount rate should be used? In order to find what rate would be appropriate in a given case, you would need to take account of how inflation would affect interest earnings and discount rates.

Thus, predictions about inflation become important both (1) in finding what the capacity for future earnings would be, and (2) in finding what interest or discount rate should be applied in finding what lump sum, if paid on the date of verdict, would equal that future stream of earnings.

The effects of anticipated inflation on interest (or discount) rates may be much greater or much less in a particular year than the effects of inflation on wages. Over a long period of time, however, inflation tends to have about the same effect on interest (or discount) rates as on wages. And studies have shown that over such a long period, interest (or discount) rates on safe investments for a given period of years are about two percent higher than inflation in wage levels for that same period of years. To simplify, then, you may use this "real discount rate" of two percent, and make your findings as to future loss of earning capacity as if no inflation were expected.

When the adjusted discount rate approach is used, it is suggested that a two percent discount rate would normally be fair to both sides. Id. at 39; DeChico v. Metro-North Commuter R.R., 758 F.2d 856, 860-61 (2d Cir. 1985).

Any award for future pain and suffering must also be discounted to present value. However, the rate of discount is again adjusted for inflation. DeChico v. Metro-North Commuter R.R., 758 F.2d 856, 860-61 (2d Cir. 1985), Gretchen v. United States, 618 F.2d 177, 181 (2d Cir. 1980), Powers v. United States, 589 F. Supp. 1084, 1107 (D. Conn. 1984). Although no particular rate is required when considering inflation, it is suggested that a two percent discount rate normally would be fair to both sides. DeChico, supra, Powers, supra, and Doca, supra.

Request No. 29

## **AWARD IS NOT TAXABLE**

If you make any award of damages, such award is not subject to federal income taxes and you should not consider such taxes in determining the amount of damages, if any. Sand, <u>4 Modern Federal Jury Instructions</u> §89-36 (1993).

## CERTIFICATE OF SERVICE

This is to certify that a copy of the foregoing was mailed, first class mail, postage prepaid to:


Cathleen Giannetta, Esq.
William W. Cobb, Esq.
Landman Corsi Ballaine & Ford
120 Broadway - 27th Fl.
NY, NY 10271

on March 9, 2004.

George J. Cahill, Jr.